CALDWELL, Respondent, v. GARNER, Appellant.

1. What constitutes a delivery of personal property must depend very much on the particular character of the property and the circumstances attending the alleged delivery.
2. An instrument in writing purporting to be a present transfer of personal property operates, *prima facie*, as a complete transfer thereof from the day of its date.
3. Declarations made by an agent after the expiration of his agency are not admissible in evidence as such; they could constitute no part of the *res gestæ*.
4. *Quere*, what is the construction to be given to the second clause of the sixth section of the act concerning witnesses disqualifying assignors of accounts, judgments or things in action from testifying concerning facts occurring anterior to the assignment, and rendering grantors, vendors or assignors in deeds, instruments in writing affecting property, incompetent as witnesses to alter, change or qualify the proper effect and operation of the words and terms of such deed, instrument or writing?

*Appeal from Marion Circuit Court.*

This was an action to recover the value of certain railroad ties that had been levied on by the defendant under a writ of attachment as the property of one Broad. Said ties are claimed by the plaintiff to have been his at the time of the levy, by virtue of a sale and delivery to him by one Taylor as agent of said Broad. The plaintiff Caldwell and one White, in January, 1857, sold to Broad all the trees suitable for tie-timber on a certain piece of land, at the rate of four dollars per acre, payment to be made on the 1st of March, 1857. On the 27th of February, 1857, said Broad, by Taylor as his agent, executed an instrument in writing by which he delivered to said Caldwell all the ties, to be held as his property till the above contract for their payment should be satisfied in full. On the 3d of March, 1857, said ties were levied on as the property of said Broad under a writ of attachment issued February 26, 1857, at the instance of the defendant Garner. They were sold under the order of the court as the property of said Broad. At the trial, White was called as a witness in behalf of plaintiff. The defendant ob-

jected to his testifying on the ground that he was interested in the contract. He testified that on a settlement with Caldwell before February 27, 1857, he had transferred to plaintiff his interest in the claim against Broad. This was not by writing. The court permitted him to testify. He identified the ties levied on by the sheriff as those conveyed by Taylor as agent of Broad to plaintiff.

The court, at the instance of the plaintiff, gave the following instructions: " 1. The admission of Broad, by his agent Taylor, in the instrument of writing, that the property or ties were then delivered to plaintiff is evidence against defendant of such delivery, and may be considered by the jury if they find from the evidence that said Taylor was authorized to make such delivery. 2. If the jury find from the evidence that before the attachment was levied Lewis Broad delivered the ties in dispute to the plaintiff under a contract that plaintiff should hold said ties until his (plaintiff's) debt was paid, and that after said ties were so delivered the writ of attachment was by the direction of defendant levied on said ties, they ought to find for the plaintiff."

The court, at the instance of the defendant, gave the following instruction: " The recital of delivery in the instrument of writing purporting to have been executed by Taylor as the agent of Lewis Broad is not conclusive proof of an actual delivery; and unless the jury believe from the evidence that Taylor was the agent of Broad to deliver the ties, and that he did actually deliver them in pursuance of the terms of the instrument, they will find a verdict for the defendant."

The following instructions asked by defendant were refused: " 1. On the delivery of the attachment to the sheriff on the 26th of February, a lien attached from that time upon the property of Broad. 2. The date of the instrument from the agent of Broad, conveying to Caldwell, is not *prima facie* evidence of the fact of delivery on the date stated in the instrument, but the fact of delivery thereof must be proved by testimony satisfactory to the jury to have been before the

time of the levy by the sheriff. 3. There is no proof that the property was delivered to plaintiff by Broad's agent to warrant a verdict for plaintiff. 4. The assignment of the interest of White to plaintiff in the contract must have been in writing to enable plaintiff to sue in his own name." The jury were instructed as to the measure of damages.

*Pratt & Mc Cabe*, for appellant.

I. The only proof of sale and delivery before the levy was the date of the instrument signed by Taylor. Delivery was essential. Broad's contract was to pay for the ties on the 1st of March, 1857. The date is not *prima facie* evidence that the instrument was made at the time of its date. (2 Stark. Ev. 147 ; Mood. & Mal. 270.) White was not a competent witness. The mere verbal transfer of his interest to Caldwell was not sufficient. The first instruction given for plaintiff was erroneous. The assertion in the instrument that the ties were delivered is no evidence of a delivery in fact. So the second instruction. The date of the instrument was not evidence of the fact of delivery. The court erred in refusing the second instruction asked. The assignment should have been in writing. It was an interest arising out of realty. The levy of the attachment is binding. The declaration of Taylor showed that on the 3d of March he had not then conveyed and that the instrument was ante-dated.

*Dryden & Lipscomb*, for respondent.

I. The instructions given presented the law of the case fairly to the jury. The possession of a writing is *prima facie* evidence of its delivery at its date. (14 Pet. 322 ; 6 Pet. 124 ; 4 East, 477 ; 5 B. & Ad. 902.) The instructions of the defendant were properly refused. The lien of an attachment attaches only from the levy. It was Caldwell's possession and not White's that was invaded. The declarations of Taylor were properly rejected. (2 Stark. Ev. 34, 35 ; 1 Greenl. Ev. § 113, 114.)

NAPTON, Judge, delivered the opinion of the court.

What constitutes a delivery of personal property must necessarily depend very much on the particular character of the property and the circumstances attending the alleged delivery. In this case the property consisted of railroad ties, cut upon the plaintiff's land, and the transfer attempted to be proved was from the party who had cut the timber and had not paid for it, and was for the avowed purpose of securing the plaintiff in his claim growing out of this transaction. The ties were still on the plaintiff's land when the sale or pledge toook place. The date of the paper, purporting to deliver the cross-ties to plaintiff for the purpose of holding them until his claim for the timber was paid, was the 27th of February, 1857, one day after the issue of the attachment sued out by the defendant in this case, but several days previous to its levy. If the transaction was *bona fide*, we do not see what ground the attaching creditor has to stand on.

The only dispute was as to an actual delivery. It is difficult to see what additional acts on the part of the vendor or vendee could be necessary to complete the sale or pledge evidenced by the writing in this case. Caldwell, the plaintiff, was the owner of the land where the cross-ties were cut and lying; and although, by the terms of his contract with the party who had cut down the timber, payment was not due till the 1st of March, nothing could be more natural or proper than for this party to be willing to secure this debt by leaving the ties with the owner of the land from whose timber they were made. Such a transaction has no semblance of fraud about it. What creditor could have a higher claim upon this property than the one whose claim grew out of the transfer of the property itself? There was no lien; but if a debtor under such circumstances sees proper to secure his vendor and creditor, it can not be pretended that any suspicion of fraud ought to be entertained.

There being then no appearance of fraud, what change of

possession could be effected in the property to make a delivery? The property was already on the plaintiff's land, and, so far as we can see, capable of being quite as conveniently disposed of there as by hauling it to some other point. What other possession could be taken of two thousand railroad ties lying in the woods where they were cut?

The question of delivery was disposed of by the jury under instructions to which no objections are perceived. The paper signed by Taylor was *prima facie* executed at its date, and was at least *prima facie* evidence of a complete transfer, effectual against a subsequent levy under an attachment. There was no circumstance in evidence to throw any doubt over its actual execution on the day it bore date. There was, it is true, an offer to prove declarations of Taylor, on the day of the levy, to the effect that he had never transferred the ties to the plaintiff, but those declarations were clearly incompetent. Taylor was a competent witness, and upon what principle could his declarations be used? His acts, and perhaps his declarations, whilst acting as agent, would be competent against his principal; but how could his declarations, made after his agency expired, be any evidence, even against his principal, much more against this plaintiff? They could constitute no part of the *res gestæ;* they would be mere declarations of a third person, not a party to the suit, or acting as agent of a party. Taylor should have been called, if any information was desired from him concerning the date of the paper executed by him as agent.

Whether White was a competent witness for plaintiff as to the identity of the logs or ties is a question which, so far as the merits of this case are concerned, is obviously immaterial. The identity of the ties was well established by other proof. There was, in truth, no dispute at the trial on this point.

The statute contains a provision that disqualifies an assignor from testifying concerning facts occurring anterior to the assignment, and does not permit him to give any evidence which might have a tendency to destroy or qualify in any

way the effect of the written instrument by which he has passed a title to property. (R. C. 1855, p. 1578.) We suppose there was no intention in this provision to prohibit the assignor from proving the fact of the assignment itself. Such proof does not come in conflict with the letter or the spirit of this provision. The latter part of the clause is a mere codification of an established principle in the law of evidence; the first part presents some difficulty in determining to what class of facts the prohibition was intended to extend. The object of the clause is not very clear. Some facts have no relation to time. There may be a period at which the knowledge of them is obtained by the witness, but the facts themselves are independent of time. Was it designed to preclude the witness from speaking of such facts? If not, what was the motive for prohibiting the assignor from testifying to occurrences which had passed away and were ended, if at the time of his examination he had ceased to have any interest in the matter? If they were of a character to affect the rights of his vendee, the latter part of the clause excludes them; but if they were not of this nature, the object of excluding them is not very perceptible.

Judgment affirmed. The other judges concur.